UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,

v.                                                                      Criminal Case No. 15-20351
                                                                    Civil Case No. 18-11867

Manawar Javed,

                                                                    Sean F. Cox
    Defendant/Petitioner.                       United States District Court Judge

_____/

## OPINION & ORDER DENYING JAVED'S MOTION UNDER 28 U.S.C. § 2255

       This is a habeas petition made pursuant to 28 U.S.C. § 2255. Acting through Court-appointed counsel, Petitioner Manawar Javed filed his habeas petition, asserting that he is entitled to relief from his conviction of conspiracy to commit health care fraud and wire fraud. Javed claims that his trial counsel provided ineffective assistance by failing to explain the immigration consequences of his guilty plea and all of the terms of his Rule 11 agreement. Because the files and records of the case conclusively show that Javed is not entitled to habeas relief, an evidentiary hearing is not necessary and the matter is ripe for the Court's decision. For the reasons below, the Court will deny the motion and decline to issue a certificate of appealability.

## BACKGROUND

       On June 11, 2015, a grand jury indicted Javed on one count of conspiracy to commit health care fraud and wire fraud ("Count I"), and one count of conspiracy to pay and receive kickbacks ("Count II"). Javed was released on bond. During his criminal proceedings, Javed was represented by attorney Edward Wishnow.

       On March 17, 2016 (the day of the final pre-trial conference), Javed agreed to a Rule 11 plea

agreement, wherein he would plead guilty to Count I and the Government would dismiss Count II. The Court scheduled a plea hearing for March 18, 2016. On the morning of the plea hearing, the Government moved to detain Javed pending sentencing because of comments he had made to his Pre-Trial Services Supervisor.

During the plea hearing, Javed confirmed that he had reviewed the Rule 11 agreement with his counsel and that he was satisfied with his counsel's performance:

> The Court: It is my understanding that you have executed a Rule 11 Plea Agreement, which has been marked as Exhibit One. Is that correct?
>
> Javed: Yes, sir.
>
> The Court: Do you have that document in front of you?
>
> Javed: Yes.
>
> The Court: Is your signature on that document?
>
> Javed: Yes, sir.
>
> The Court: At what page?
>
> Javed: Page 16, sir.
>
> The Court: Before you signed that document, did you read the document as well as the attached worksheets, which are worksheets A, B which consists of two pages, worksheet C, which consists of two pages, as well as worksheet E which consists of four pages?
>
> Javed: Yes, sir.
>
> The Court: Before you signed Exhibit One, did your lawyer answer each and every question that you had regarding anything contained in the Rule 11 agreement

| | |
|---|---|
| | as well as the attached worksheets? |
| Javed: | Yes, sir. |
| The Court: | Do you have any questions at all regarding anything contained in the Rule 11 agreement as well as the attached worksheets? |
| Javed: | No, sir. |
| The Court: | Has Mr. Wishnow answered each and every question that you've had regarding your case? |
| Javed: | Yes, sir. |
| The Court: | Are you satisfied with the advice and service provided to you by your attorney in your case? |
| Javed: | Yes, sir. |

(ECF No. 156, PageID 1092-1094).

The plea hearing also touched upon the issue of Javed's immigration status:

| | |
|---|---|
| The Court: | Sir, it's my understanding that you are not a citizen of the United States, is that correct? |
| Javed: | Yes, sir. |
| The Court: | In fact, you have a green card to work in the country, is that correct? |
| Javed: | Yes, sir. |
| The Court: | And do you understand that by pleading guilty you probably will never be able to apply and become a citizen of the United States? Do you understand that? |
| Javed: | Yes, sir |

(ECF No. 156, PageID 1100).

The Court did not inform Javed that he may be deported because of his plea. The Court accepted Javed's guilty plea and took the Rule 11 under advisement.

Immediately after the Court accepted Javed's guilty plea, it held a hearing on the Government's motion to detain Javed pending sentencing. To meet his burden to show that he should not be detained pending sentencing, Javed called Pre-Trial Services Supervisor Brandi Baltes to testify about the comments that troubled the Government:

> Q   In your report, the last paragraph, it says - - page 2, but really it's page 1, the defendant made remarks suggestive of possible intention or desire to flee. You reference having a contact in Saudi Arabia that would be able to assist him if he were to relocate with his family. Defendant commented that his familial and financial resources are limited in the United States and that his in-laws and remaining family reside in Pakistan of which he is a native having only a green card as established in the United States. Further, defendant spoke of his wife needing to leave him, and inquired if pretrial services was aware of a social services agency that could look after his children. Defendant also made several remarks about how relocation with his family would allow them to remain together as the defendant is now aware of the sentencing guidelines and the length of potential incarceration he is facing. So he mentioned that he - - end of your remarks, correct?
>
> A   Yes.
>
> Q   So he mentioned that he had a contact in Saudi Arabia that would assist him if he were to relocate with his family?

      A        He did

      Q        Did you take that to mean relocating prior to sentencing?

      A        That is what I took it to mean.

(ECF No. 156, PageID 1108-1109)

Javed also called his wife, Asma Javed, to testify that these comments referred to a plan to move after he served his sentence.

      Q        Was there any discussion about relocating to Saudi Arabia?

      A        Not in particular. Like I know his friend lives in Saudi Arabia, but like he said after we're done with his case, **they are going to deport us anyway**, so we'll just go and settle in, like, any of the Middle Eastern countries.

      Q        What he meant, afterward of the case, did you understand that to mean after he was done with his sentence?

      A        The sentence, yes.

      Q        Is it your intention and his - - where did the two of you want to resettle when he is **deported**, do you have an idea?

      A        We were going to go to Pakistan first, but we were not planning to stay there. So we thought we would just move to any of the Middle Eastern countries. There's a lot of those. We'll just think about it and settle down anywhere.

           . . .

      Q        Did he indicate at any time, especially in the last couple of days, that he intended to flee the country with you and your three young boys?

      A        No. He did say that he wanted to go **after the deportation, after he's deported**,

>we will move.

(ECF No. 156, PageID 1128-1129) (emphasis added).

Javed testified that he told Baltes about a plan to move to Saudi Arabia because, after his sentence, he "[did not] want to stay here and [he did not] want to go back to Pakistan." (ECF No. 156, PageID 1140).

After the detention hearing, the Court granted the Government's motion and detained Javed pending sentencing. At sentencing, Javed moved for a downward variance based on his status as a deportable alien. (ECF No. 188, PageID 1385). The Court sentenced Javed to 121 months, the bottom of the Guidelines. Javed appealed, arguing that the Court had impermissibly considered his national origin and immigration status during sentencing. The Sixth Circuit concluded that this argument was within the scope of the appeal waiver contained in Javed's plea agreement and dismissed the appeal. (ECF No. 254).

## STANDARD OF REVIEW

Javed's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a

"fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

Defendants seeking to set aside their sentences pursuant to § 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003). When a defendant files a § 2255 motion, he or she must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).

## ANALYSIS

The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 688 (1984) governs this Court's analysis of ineffective assistance of counsel claims. "In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 F. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, Javed must show that his "counsel's representation fell below the objective standard of reasonableness." *Lint,* 542 F. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable

7

professional conduct. *Lint,* 542 F. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, Javed must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations omitted).

To establish prejudice, Javed must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "In the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 F. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

Here, Javed argues that his counsel provided constitutionally ineffective assistance by (1) failing to inform him of the immigration consequences of his plea, and (2) failing to explain the terms of his plea agreement.[1]

**I.      Immigration Consequences**

In *Padilla v. Kentucky*, the Supreme Court held that the Sixth Amendment's right to effective assistance of counsel requires that defense counsel "inform her client whether his plea carries a risk of deportation." 559 U.S. 356, 374 (2010). Javed asserts that, when he pleaded guilty, he had no

---

[1]In his motion, Javed also states that "Mr. Wishnow failed to make relevant objections to the guidelines." However, Javed does not explain what objections should have been made or otherwise address this argument. Thus, Javed has abandoned it.

8

idea that he would be subject to deportation at the end of his sentence:

> At no point in the litigation was [he] told that there were immigration consequences to his plea. At the crucial point when he pled guilty, he was not aware of the consequences of his plea. The reality is that [Javed] walked out of the Plea Hearing, uninformed as to the certainty of his deportation.

(ECF No. 286-1, PageID 2221).

Javed's assertions are belied by the record. His wife testified that, before he entered his guilty plea, they had discussed the family's plans for after he was deported post-sentence. Further, at sentencing, Javed argued for a downward variance based on his deportable status. Thus, the record shows that Javed was aware of his immigration consequences before he pleaded guilty and before his sentence was final.

Even if the Court were to accept Javed's assertion that his counsel did not tell him about the immigration consequences of his guilty plea, he has not shown a reasonable probability that the outcome of the plea process would have been different. As his testimony at the detention hearing makes clear, Javed "[did not] want to stay here," after his sentence. (ECF No. 156, PageID 1140). Before he pleaded guilty, he was already planning to move to Saudi Arabia or another Middle Eastern country after his sentence. In fact, his whole argument at the detention hearing was that he planned to leave the country *after his sentence*. Yet he now contradicts his previous assertion by stating that he would not have pleaded guilty if he had known it meant leaving the country after his sentence. Given Javed's clear, pre-plea desire to leave the United States, the Court concludes that there is not a reasonable probability that the plea process would have been different if he had been aware of the immigration consequences of pleading guilty. *See Lee v. United States*, 137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hac* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to

contemporaneous evidence to substantiate a defendant's expressed preferences.")

## II. Rule 11 Agreement

In passing, Javed also states that "[d]efense counsel failed to review and explain with Mr. Javed the plea agreement prior to the plea hearing. Defense counsel simply demanded that Mr. Javed sign it, explaining that there was nothing else they could do." (ECF No. 286-1, PageID 2212). At the plea hearing, however, Javed confirmed that he had reviewed the agreement with his counsel, who had answered each and every question he had about the agreement and the attached worksheets. (ECF No. 156, PageID 1093-1094). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Court concludes that Javed's current allegations against his counsel, which are unsupported by specifics and contradicted by the record, are wholly incredible. *Id*.

## III. Certificate of Appealability

For the reasons above, the Court concludes that Javed is not entitled to habeas relief.

A certificate of appealability must issue before Javed may appeal the Court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b).

28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. As the Supreme Court has explained this standard:

> . . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). As the Court has stated, "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Here, Javed's § 2255 Motion raised claims of ineffective assistance of counsel. The Court concludes that reasonable jurists would not find the Court's assessment of Javed's claims debatable or wrong. The Court shall therefore decline to issue a certificate of appealability.

## CONCLUSION & ORDER

For the reasons stated above, the Court **DENIES** Javed's § 2255 Motion.

**IT IS FURTHER ORDERED** that the Court **DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY**.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge