UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                    Criminal Case No. 15-20351

Manawar Javed,                 Sean F. Cox
                                                    United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

In this criminal action, Defendant Manawar Javed ("Defendant") was convicted of Conspiracy to Commit Health Care Fraud and Wire Fraud and was sentenced to 121 months of imprisonment. The matter is before the Court on Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), which is based upon concerns about the ongoing novel coronavirus pandemic ("COVID-19"). This motion asks the Court to allow Defendant to serve the remainder of his sentence at home because he is concerned that he could contract the virus. The Court concludes that a hearing is not warranted and orders that the motion will be decided based upon the briefs. As explained below, the Court shall DENY the motion.

**BACKGROUND**

In this criminal case, Defendant pleaded guilty to Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1347, and 1349. This Court sentenced Defendant to a term of 121 months of imprisonment. (*See* ECF No. 190, Judgment).

This Court imposed sentence upon Defendant on October 7, 2016. Before doing so, this Court carefully considered the applicable § 3553(a) factors as they relate to Defendant

and discussed them on the record:

> Sir, you pled guilty to Count One, conspiracy to commit healthcare fraud and wire fraud with a Rule 11 on March 18th of this year, 2016.
>
> In a moment, I'm going to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth under 18 U.S.C. Section 3553(a).
>
> I've considered the nature and the circumstances of this offense. You were involved in a conspiracy. You were an important part of the conspiracy. Obviously, looking at your education, you have a degree of sophistication in business, setting up businesses, running businesses, which I'm sure were of great value to the success of this illegal conspiracy that stole millions, millions of dollars from, it is true, the United States government, but actually it wasn't necessarily the United States government.
>
> It was from people, poor people, people that can't really afford good medical care. They have to go to the government because they don't make enough money to get quality medical care. You stole millions of dollars from the poor. Not the rich. Not the middle class. From the poor of the United States. Millions of dollars.
>
> It's worse than breaking into somebody's home in Bloomfield Hills and stealing from them. You stole from the people that can least afford it, that need this medical care, need the government's help.
>
> And as I told Mr. -- Ms. Shivpuri and your attorneys in chambers, is that the government has a figure of 75 million –- no, it's more than that, that healthcare fraud costs this country, costs the poor of this country. And it is an epidemic.
>
> Beginning in approximately August 2008, continuing through to June 2015, you willfully conspired with others to commit healthcare fraud and wire fraud. You, along with your brother and co-conspirator Tahir, owned or were associated with multiple healthcare-related companies in the Eastern District of Michigan and elsewhere, including At-Home Network, At-Home Hospice, A+ Hospice. You and your co-conspirators, Tahir and Tariq, along with others, would maintain Medicare provider numbers for the Tahir companies to submit Medicare claims for the cost of in-home physical therapy, occupational therapy, skilled nursing, hospice and other services.
>
> You, along with the co-conspirators, would often provide kickbacks, bribes, and other inducements to, quote, unquote, marketeers, in exchange for the marketeers obtaining referrals of Medicare beneficiaries to the Tahir companies for purported home healthcare, hospice and other services. You, as well as your other co-conspirators, would offer and provide kickbacks, bribes, to physicians, including Alam and Ataya for the purposes of inducing these physicians to refer Medicare beneficiaries to the Tahir companies for quote, unquote, healthcare, hospice and other services.
>
> The physicians would in turn refer Medicare beneficiaries to the Tahir

companies for purported home healthcare and hospice services and bill for services purportedly provided to Medicare beneficiaries, when many of the services were medically unnecessary and not provided. And again, the referrals were induced by bribery and kickbacks. That was you. That was what you were doing.

I've considered your history and your characteristics. You're not some person off the street, some person that's had no opportunity in life, some person with no education that has to resort to crime to survive. That was not you. You had an education, a good education. You had opportunity to have a good living, but yet you resorted to stealing from the poor to supplement your income.

You are 41, come from a big family. You're married with three children. I am very familiar with your wife and your children from the excellent sentencing memorandums provided to me by Mr. Wishnow and Mr. Friedman. There is apparently an issue of whether or not you suffer from depression. No substance abuse. Again, you're a well-educated individual. What is interesting, as I told Mr. Wishnow and Mr. Friedman, you really didn't seem to live above your means during the course of the conspiracy. A lot of these healthcare defendants who were involved in the fraud that you were involved in live in these exorbitant lifestyles. You didn't.

So I'm wondering where did all the money go. In 2012, $379,000 -- or where all the money is. Two thousand and thirteen, $484,000. In 2014, you pulled in over two million dollars. Where is that money? Have you hidden it? Where is it? So I have, again, considered your history and your characteristics.

I've considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for this offense to afford adequate deterrence to criminal conduct

I wonder if you appreciate what you have done, the harm that you've done to your community. You're an immigrant from Pakistan. You know that there's a big movement to stop immigrants from coming to this country, in particular, immigrants who are of the Muslim faith, immigrants who are from Pakistan, because they're quote, unquote, criminals.

And what did you do to your community? You're a criminal. You're an immigrant that came to this country and became a criminal who stole from the poor, like the other individuals involved in this healthcare fraud.

You know, as I sit here and reflect, and I'm just thinking about my own staff here, several of whose parents are immigrants who had to work hard in this country so their kids could get an education.

I think of my own parents. My dad worked as a carpenter and my mom as a waitress. And they didn't need to steal or do anything. They worked hard and yet were able to provide for their kids and give their kids a better opportunity than they ever had.

You have more of an opportunity to succeed in this country that my parents, than the staff -- than my staff's parents did. And what did you do? You stole from the poor. And you're asking me to go under the guidelines for you, to

3

> have sympathy, to have mercy for you?
> And I know Mr. Gurewitz is out there listening to this as well. I don't have any sympathy for what you and your co-conspirators did in this case, none. You hurt your family. You hurt your fellow countrymen by what you did. And you have hurt and slandered all the immigrants that are in this country right now and the discrimination that they have to face because of criminal activity by immigrants.
> I've considered the need to protect the public from further crimes by you, to provide you with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
> I've considered the kinds of sentences available. The max is 20 years. I've accepted the Rule 11, so Im capped at 151. Probation is an option, but obviously that's not something I'm going to do.
> Again, I've considered the excellent brief by your attorneys, Mr. Friedman and Mr. Wishnow for a variance and departure that I'm not going to do. I'm not going to do it.
> So I have considered all the factors under 18 U.S.C. Section 3553 in imposing the sentence that I'm going to impose upon you right now.

(ECF No. 188, Sentencing Transcript).

Defendant is now serving his sentence, which he began serving on March 24, 2016. He is currently being housed at MVC Moshannon Valley CI. His projected release date is October 18 2024.

On September 18, 2020, Defendant filed a *pro se* Motion for Compassionate Release, claiming that he is at risk of the more severe complications from COVID-19, if he were to contract the virus, because of his age. (ECF No. 363). Defendant is forty-five years old. Defendant also contends that he should be released because his wife is caring for the couple's three minor children by herself. Defendant claims that his children have learning disabilities and face other challenges. He also contends that his "wife does not have the time to volunteer to school activities due to the huge financial responsibilities that have bestowed upon her." (Def.'s Br. at 7).

The Government agrees that Defendant has exhausted his administrative remedies but

opposes the motion on the merits. It argues that Defendant has not shown any extraordinary circumstances as he does not claim to have any medical conditions that place him at heightened risk of the more severe complications of COVID-19, if he were to contract the virus, and he is only 45 years old. The Government also argues that Defendant's motion should be denied because a consideration of the § 3553(a) factors weighs against release.

## ANALYSIS

"The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances. 18 U.S.C. § 3582(c)(1)(A)." *United States v. Jones*, __ F.3d __, 2020 WL 68117488 at *1 (6th Cir. Nov. 20, 2020).

"An imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request – whichever is earlier." *Id.* at *4. Here, it is undisputed that Defendant exhausted his administrative remedies, and therefore, the Court may consider Defendant's motion.

The United States Court of Appeals for the Sixth Circuit has recently held that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry. "The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction. 18 U.S.C. § 3582(c)(1(A)(I).[1]" *Jones, supra,* at *6.

"At step two, a court must 'find[]' whether 'such a reduction is consistent with

---

[1] Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii).

*applicable* policy statements issued by the Sentencing Commission.'" *Id.* (quoting 3582(c)(1)(A)) (emphasis added). "The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)." *Id*. "Thus, if § 1B1.13 is still 'applicable,' courts must 'follow the Commissions's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.'" *Jones, supra* (citing *Dillon, supra*). The Sixth Circuit held in *Jones* that § 1B1.13 does not apply "to cases where an imprisoned person files a motion for compassionate release." *Jones, supra*, at * 7. That means that, '[u]ntil the Sentencing Commission updates § 1B.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*. Because Defendant's compassionate release motion was filed by an incarcerated person, this Court "may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement in § 1B1.13." *Jones, supra*, at * 9.

"At step three, '§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Jones, supra,* at * 7 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

This Court agrees with other courts that have concluded that the COVID-19 pandemic alone does not justify compassionate release to prisoners. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility ..., whether Defendant will

6

contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Moreover, Defendant is only forty-five years old and has not shown that he has any medical conditions that could place him at heightened risk of the more severe complications of the virus, if he were to contract it. This Court has also considered Defendant's claimed family circumstances and concludes that they do not warrant release.

In sum, the Court concludes that Defendant has not established any extraordinary or compelling circumstances that warrant his release.

This Court further concludes, as a matter of its discretion, that consideration of the § 3553(a) factors weighs against granting compassionate release in this particular case. *See United States v. Ruffin,* 978 F.3d 1000, 1001 (6th Cir. Oct. 26, 2020) (Noting the "statute leaves district courts with discretion to deny relief under a balancing of the sentencing factors in 18 U.S.C. § 3553(a).").

As this Court noted on the record at Defendant's sentencing, the offense in this case was a *very serious* offense. Defendant was involved in a large-scale conspiracy that resulted in more than thirty million dollars in fraudulently-obtained Medicare reimbursements. It was a complex scheme that was perpetrated over the course of seven years, not an isolated event. It was a crime of pure greed, as Defendant is an educated man with the ability to earn a good living without resorting to crime. And Defendant not only stole from the Medicare program, he stole from the patients that need the support of that program.

In addition, this Court already gave Defendant a break when it sentenced him to 121 months of imprisonment, the low end of his guidelines range of 121 to 151 months of imprisonment. Releasing him now, after having served only about half of that sentence, would not reflect the seriousness of his offense or promote respect for the law.

In sum, consideration of the § 3553(a) factors, including Defendant's history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh against Defendant's request for compassionate release. This Court concludes that Defendant is not an appropriate candidate for the extraordinary remedy of compassionate release.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

                                                   s/Sean F. Cox
                                                   Sean F. Cox
                                                   United States District Judge

Dated: December 4, 2020